IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC, a Delaware limited liability company, as owner of a certain 20' 2007 Baja Islander 202 for exoneration from or limitation of liability,<br><br>Plaintiff. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:09-CV-637-TC |

In April 2009, six tourists from St. Petersburg, Florida—Robert and Katherine Prescott, James and Heather Brady, and Terry and Maryanne Taranto (the Prescott Party)—were visiting Lake Powell.  The Prescott Party rented a powerboat from Plaintiff Aramark Sports and Entertainment Services, LLC, for a day-trip to Rainbow Bridge.  On April 24, 2009, Robert Prescott signed the Rental Agreement, which included a provision titled "Indemnification."  The provision is both a "hold harmless" clause and an indemnity clause, so, because of its dual nature, the court refers to it as the "Liability Clause."

On the morning of April 25, 2009, the Prescott Party took the boat out by themselves.  In the afternoon, during their return from Rainbow Bridge, the boat began to take on water, and in less than two minutes, the boat sank.  Robert Prescott, Katherine Prescott, Terry Taranto, and Maryanne Taranto died, likely from drowning or hypothermia.  The boat has not been recovered.

In July 2009, Aramark filed a pre-emptive complaint (a special admiralty claim) asking the court to limit Aramark's liability to the post-accident value of the boat under the Shipowner's

Liability Act of 1851, 46 U.S.C. §§ 30501-30512.[1]  The estates and heirs of the Prescotts and the Tarantos (the "Claimants") filed counterclaims alleging negligence and unseaworthiness.

Now the court must resolve cross-motions for partial summary judgment addressing the enforceability of the Liability Clause in the Rental Agreement signed by Mr. Prescott.  Aramark contends that the Liability Clause requires Mr. Prescott to hold harmless and indemnify Aramark for claims of negligence by Mr. Prescott and third parties, including the Claimants.  The Claimants contend that the Liability Clause is unenforceable.[2]

For the reasons set forth below, Aramark's motion for partial summary judgment is granted as to Mr. Prescott and denied as to the remaining Claimants.  The Claimants' motion for partial summary judgment is denied.

## FACTUAL BACKGROUND

The day before the boat accident, Robert Prescott went into Aramark's rental office and paid for the boat rental.  He signed the two-page Rental Agreement on the front page under conspicuous language stating in relevant part that:

> [t]he Customer named above hereby enters into this Rental Agreement and agrees to be bound by all of the terms and conditions stated herein <u>including the terms and conditions printed on the reverse side of this Rental Agreement</u>.

(Rental Agreement (Ex. B to Aramark's Mem. Supp. Mot. Partial Summ. J.) at ARA00047 (emphasis added).)  He also initialed the Terms and Conditions page (the "reverse side" of the agreement) on the bottom right-hand corner in a space after the words "Read and Agreed:

---

[1]The Act was formerly codified at 46 U.S.C. §§ 181-189.

[2]Although the Claimants contend that Aramark was negligent, that issue is not before the court at this time.

[Customer's Initials]."  (See Ex. 36 to Claimants' Mem. Supp. Cross-Mot. for Partial Summ. J.)[3]
The remaining members of the Prescott Party did not sign the Rental Agreement.  There is no evidence that they read the Rental Agreement or were present when Mr. Prescott signed the agreement.

The Terms and Conditions page included a paragraph titled "Indemnification."  That contract provision, upon which Aramark relies to bar the negligence and unseaworthiness claims against it, is both a "hold harmless" (or exculpatory) clause and an indemnity clause.  It states:

> Indemnification. Customer will indemnify and hold harmless [Aramark] from and against any claims, suits, penalties, obligations, costs and expenses (including reasonable attorney's fees), including claims by Customer or by third parties (which may include members of Customer's party), incurred or suffered by such indemnified parties with respect to injury to persons or damage to property resulting or arising from Customer's use of the Rented Equipment or Customer's failure to comply with its obligations set forth in this Rental Agreement.

(Rental Agreement Terms & Conditions ¶ 10 (emphasis added).)

Although Aramark focuses on the Liability Clause in its motion, the Claimants expand the factual issues to include the events of April 24-25, 2009.  They devote most of their cross motion for partial summary judgment to discussing those events and arguing why the evidence in their 185-paragraph-long statement of facts shows Aramark's gross negligence.  But they do not ask for a ruling on whether Aramark was negligent, much less grossly negligent.  Because the

---

[3]The document that Aramark presented to the court does not have initials next to the "Read and Agreed" section of the Terms and Conditions page.  But the Claimants produced a National Park Service copy of the signed agreement that does include initials on the bottom right corner of the Terms and Conditions page.  Even if Mr. Prescott did not initial the Terms and Conditions page, the court finds that his signature under the paragraph that expressly directs him to the "terms and conditions printed on the reverse side of this Rental Agreement" is sufficient to conclude that he agreed to those terms.

3

legal analysis in the parties' pleadings focuses on the enforceability of the Liability Clause, this order limits the analysis to that discrete issue as well.

## ANALYSIS

The court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." Northern Nat. Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008). The court may only rely on evidence that would be admissible at trial. Fed. R. Civ. P. 56(c)(1). A party is entitled to summary judgment if no genuine dispute as to any material fact exists and no reasonable jury could find for the nonmoving party. Pinkerton v. Colorado Dep't of Transp., 563 F.3d 1052, 1058 (10th Cir. 2009).

**A.     Admiralty Jurisdiction**

The purpose of the Rental Agreement was to address the rights and obligations of the contracting parties concerning rental and use of the powerboat on Lake Powell. The activities giving rise to the alleged tort occurred on a navigable water of the United States (Lake Powell) or in connection with navigating a boat on Lake Powell. Given those facts, and courts' view that recreational boating bears a substantial relationship to traditional maritime activity, this court has admiralty jurisdiction under 28 U.S.C. § 1333(1).[4] Sisson v. Ruby, 497 U.S. 358, 365-66 (1990); Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675 (1982); see also, e.g., Charnis v. Watersport

---

[4]"The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Pro, LLC, 2009 AMC 1299, 2009 U.S. Dist. LEXIS 76022 (D. Nev. May 1, 2009) (holding that activity of providing waterskiing and wakeboarding services to tourists on Lake Mead was substantially related to traditional maritime activity); Waggoner v. Nags Head Water Sports, Inc., 1998 AMC 2185, 1998 U.S. App. LEXIS 6792 at *2 (4th Cir. Apr. 6, 1998) (holding that events relating to rental and use of a jet ski for pleasure were governed by principles of maritime law) (citing Jerome B. Grubhart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 543 (1995)).

Accordingly, the court must apply admiralty law. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law."). Where admiralty law does not provide a clear rule, the court looks to state law to fill in the gaps. Charnis, 2009 AMC at 1302-03 (citing Kossick v. United Fruit Co., 365 U.S. 731, 738 (1961); KDME, Inc. v. Bucci, Case No. 05CV199, 2007 U.S. Dist. LEXIS 59810, *7-*9 (S.D. Cal. Aug. 14, 2007).

B.   **Threshold Procedural Issues**

   1.   **Aramark's failure to plead the "hold harmless" agreement as an affirmative defense does not bar the claim now.**

The Claimants assert that Aramark is barred from relying on the "hold harmless" portion of the Liability Clause to avoid liability because Aramark failed to plead the exculpatory aspect of the clause as an affirmative defense in its answer to the counterclaims.[5] To support their argument, the Claimants cite to the rule governing pleading of affirmative defenses, which states

---

[5]The Claimants also raise an argument that Aramark's claim was a compulsory counterclaim and failure to plead it now operates as a bar. But the Claimants raised that argument for the first time in their Final Reply (Docket No. 150). The court will not consider it because Aramark has not had an opportunity to respond to it. The same applies to the statute of limitations defense raised for the first time in the Final Reply.

that, "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: ... assumption of risk; ... release; ... and waiver." Fed. R. Civ. P. 8(c)(1). But, as Aramark points out, when there is no prejudice to the other party, "federal courts generally allow defendants to raise an affirmative defense for the first time in a motion for summary judgment." (Aramark's Reply & Opp'n (Docket No. 142) at 6, citing Moore, Own, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993); Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991); Van Pier v. Long Island Sav. Bank, 20 F. Supp. 2d 535, 540 (S.D.N.Y. 1998); Steinberg v. Columbia Pictures Indus., Inc., 663 F. Supp. 706, 715 (S.D.N.Y. 1987); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1278 (3d ed. 2004) ("the substance of many unpleaded affirmative defenses may be asserted by pretrial motions, particularly in the absence of any showing of prejudice to the opposing party and assuming it has had an opportunity to respond").)

The court's main consideration is notice to the opposing party. Resolving Aramark's claim will not prejudice the Claimants, because they had sufficient notice that Aramark was going to rely on the Liability Clause to limit Aramark's liability. For instance, Aramark cites the Liability Clause in its Complaint and attaches the signed Rental Agreement to the Complaint. Aramark disclaims its own liability, affirmatively alleging that the boat sank and the four passengers died because the Prescott Party was negligent (Aramark alleges that the Prescott Party took the boat outside the marked navigable channel, struck an underwater hazard causing the boat to sink, and were not wearing life jackets at the time of the accident).

The Claimants argue, however, that they did not have notice that Aramark was going to rely on the Liability Clause to support its current theory—that the indemnification clause bars

claims against Aramark for its <u>own</u> negligence. While true that Aramark does not expressly allege in its Complaint that even if it were negligent it would not be liable because it is protected by the Liability Clause, the Claimants' argument is not persuasive.

The language in the Complaint gave sufficient notice to the Claimants. The very title of Aramark's only cause of action—"Limitation of Liability"—assumes wrongdoing by Aramark. The Complaint refers to the Liability Clause as "the Waiver of Liability Agreement," and the "hold harmless" language of the indemnification clause itself could be interpreted to mean limitation of Aramark's own liability. Accordingly, consideration of Aramark's indemnification claim will not prejudice the Claimants.

    **2.**    **The Indemnification Issue is Ripe.**

Aramark asks the court to declare, as a matter of law (before resolution of the merits of the negligence claims), that the Liability Clause bars the Claimants' negligence and unseaworthiness claims. (<u>See</u> Aramark's Mot. for Partial Summ. J. (Docket No. 120) at 5 ("<u>Mr. Prescott's assent</u> to the indemnification and exculpatory provision of the Rental Agreement <u>relieves Aramark of the Claimants' claims</u> and <u>requires that he defend and indemnify Aramark</u> from the same.") (emphasis added).) The Claimants contend that the issue of whether Mr. Prescott has a duty to indemnify Aramark is not ripe for decision.

Here, the Claimants have disputed Mr. Prescott's obligation to indemnify Aramark under the Rental Agreement, and Aramark has already incurred attorneys' fees and costs in defending against Claimants' claims. This creates an actual controversy on the discrete issue of whether the Liability Clause is enforceable against Mr. Prescott's estate and heirs. For that reason, and in the interest of judicial economy, the court finds that the enforceability of the indemnity and

exculpatory provision is properly before the court.  See, e.g., Allendale Mut. Ins. Co. v. Kaiser Eng'rs, 804 F.2d 592, 594-95 (10th Cir. 1986) ("The contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication.").  For the foregoing reasons, the limited issue before the court is ripe.

C.       **Enforceability of Liability Clause**

Under admiralty law, indemnity and exculpatory clauses are valid and enforceable if they are (1) clear and unambiguous; (2) consistent with public policy; and (3) not part of a contract of adhesion.  Olivelli v. Sappo Corp., Inc., 225 F. Supp. 2d 109, 118-19 (D. Puerto Rico 2002); Charnis, 2009 AMC at 1306.  If the three factors are present, and the court does not find overreaching, a monopoly, or significantly unequal bargaining power, the clause is enforceable. Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272, 274 (1st Cir. 2006).

The Claimants do not allege overreaching or a monopoly.  To the extent they contend that Aramark had an unreasonable amount of "bargaining power" because Mr. Prescott did not have a choice when signing the Rental Agreement, that argument does not succeed in the context of inherently risky recreational activities.  See Olivelli v. Sappo Corp., Inc., 225 F. Supp. 2d 109, 119 (D. Puerto Rico 2002) (holding that form contract containing exculpatory clause for use in scuba diving lessons was not an adhesion contract because it was not "inherently unfair"); Berry v. Greater Park City Co., 171 P.3d 442, 448 (Utah 2007) (holding that ski racer who signed pre-injury release had "no bargaining strength whatsoever" but the ski resort's "decisive advantage in bargaining strength was of little consequence since the race was a nonessential activity.").

Of the three elements, the Claimants focus on two.[6] They contend that the Liability Clause was not clear and unambiguous (and should be strictly construed against Aramark regardless of whether it is ambiguous) and that it is inconsistent with public policy.

### 1.     Whether the Liability Clause is Clear and Unambiguous

An indemnification clause and an exculpatory clause must be clearly and unequivocally expressed.  Sander v. Alexander Richardson Invs., 334 F.3d 712, 715 (8th Cir. 2003); Krazek v. Mountain River Tours, Inc., 884 F.2d 163, 165 (4th Cir. 1989).  There are no "magic words" or a particular format that dictate whether a clause is clear and unambiguous.  Krazek, 884 F.2d at 166, quoted in Waggoner, 1998 AMC at 2189-90, 1998 U.S. App. LEXIS at *9-*10.

Here, the Liability Clause provides as follows:

> Indemnification. Customer will indemnify and hold harmless [Aramark] from and against any claims, suits, penalties, obligations, costs and expenses (including reasonable attorney's fees), including claims by Customer or by third parties (which may include members of Customer's party), incurred or suffered by such indemnified parties with respect to injury to persons or damage to property resulting or arising from Customer's use of the Rented Equipment or Customer's failure to comply with its obligations set forth in this Rental Agreement.

(Rental Agreement Terms & Conditions ¶ 10 (emphasis added).)  The main issue is whether the language in the clause was sufficiently clear to inform the signer that he was agreeing to absolve Aramark of any liability for its own negligence.

---

[6] It does not appear that the parties dispute the third element (contract of adhesion), so the court need only analyze the first and second elements to determine whether the Liability Clause is enforceable.  (See Aramark's Opp'n & Reply (Docket No. 142) at 8 n.3 (noting that Claimants do not discuss the contract of adhesion element, and citing admiralty and Utah law supporting proposition that a mandatory use of waiver in recreational sporting is not unfair or contrary to public policy).)  See also Olivelli, 225 F. Supp. 2d at 119 (finding "nothing inherently unfair in the use of waivers in recreational sporting events such as scuba diving").

The first part of the Liability Clause, entitled "Indemnification," says in plain language that the Customer (i.e., Robert Prescott), "will indemnify and hold harmless" Aramark. The Claimants essentially contend that the clause does not unambiguously relieve Aramark of liability for its own wrongdoing because the clause does not use the word "negligence," "fault," or something similar. (See Claimants' Opp'n Mem. (Docket No. 128) at 60-64.) But the clause does not need to use the term "negligence" to be clear and unambiguous. Krazek, 884 F.2d at 166; Waggoner, 1998 AMC at 2189, 1998 U.S. App. LEXIS at *10-*11. The phrase "all claims" has been held to include negligence, and it logically follows that the similar phrase "any claims" would include negligence by Aramark. See Waggoner, 1998 AMC at 2189, 1998 U.S. App. LEXIS at *10-*11.

As Aramark points out, the clause would not make sense otherwise:

> [I]f "any claims" in the context of the indemnity and exculpatory provision did not include Aramark's own negligence, the provision would be meaningless. Aramark's only potential liability is for its own negligence—aside from a claim of negligence against Aramark, there is nothing for Mr. Prescott to indemnify Aramark against or hold Aramark harmless from.

(Aramark's Reply & Opp'n (Docket No. 142) at 15.) The Fourth Circuit, analyzing a clause very similar to the one signed by Mr. Prescott,[7] adopted the same reasoning:

---

[7]The clause in Waggoner stated:

WAIVER AND ASSUMPTION OF RISKS: I Pat Waggoner voluntary [sic] with knowledge, assume all risk of accident or damages <u>to my person, my passenger of [sic] property</u> which may be incurred from or be connected in any manner <u>with my use, operation or rental of the craft</u> checked above. I hereby release Nags Head Watersports, Inc., it's [sic] agent and emplorees [sic] from all claims, demand, actions, cause of action, and from <u>all liability for damages, losses or injuries that may arise from my use of the craft</u> checked above, including but not limited to attorney's fees. This release and indemnification shall be binding upon my heirs,

Waggoner further has argued that because the waiver only applies to claims arising from her use of the watercraft, it does not bar this action which resulted from the defendant's negligence. Instead, she asserts that the clause was "clearly intended to apply to the Plaintiff's causing injury or property damage to third parties by virtue of *her* use of the craft." However, a waiver signed by Waggoner that limited *Nags Head's* liability for damages caused by *Waggoner* negligently injuring third parties would have no legal effect. Waggoner can only waive claims that she possesses, and she could only have any claims against Nags Head if *it* had been negligent, not if she were negligent.

Waggoner, 1998 AMC at 2190, 1998 U.S. App. LEXIS 6792, *11-12 (emphasis in original).

The court agrees with the assessment by Aramark and in Waggoner.

Mr. Prescott agreed to the Rental Agreement's Terms and Conditions, including the terms in Paragraph 10 titled "Indemnification." He signed the Rental Agreement, and the language directing him to the terms and conditions was conspicuous and plainly stated. The Claimants say the clause was too sparse. But the clause was short and concise, and so it was easy to read.[8] The Liability Clause was clear and unambiguous.

---

Administrators, executor and assigns.

Waggoner, 1998 AMC at 2186 (emphasis added).

[8]The Olivelli court highlighted a "damned if you do, damned if you don't" situation by quoting a California state court decision:

> "Drafters of releases always face the problem of steering between the Scylla of simplicity and the Charybdis of completeness. Apparently no release is immune from attack. If short and to the point, a release will be challenged as failing to mention the particular risk which caused a plaintiff's injury or as insufficiently comprehensive. . . . If the drafter . . . [adds] details and illustrations, the plaintiff invokes the doctrine *expressio unius exclusio alterius est* and characterizes the hazard as one not found among those listed in the release . . . ."

Olivelli, 225 F. Supp. 2d at 118 (internal citation omitted).

### 2. Whether the Liability Clause is Consistent With Public Policy

Aramark, in support of its argument that the Liability Clause is consistent with public policy, relies on the "majority rule" (adopted by the First, Fifth, Eighth, and Ninth Circuits) that maritime exculpatory clauses are enforceable when a party clearly absolves itself from liability for its own negligence.  See Broadley v. Mashpee Neck Marine, Inc., 471 F.3d 272, 274 (1st Cir. 2006); Sander v. Alexander Richardson Investments, 334 F.3d 712 (8th Cir. 2003); Royal Ins. Co. of Am. v. S.W. Marine, 194 F.3d 1009, 1014 (9th Cir. 1999); Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir. 1986).

The Claimants emphasize an Eleventh Circuit decision which holds that, as a matter of public policy, an exculpatory clause may not totally absolve a wrongdoer from liability for its own negligence.  See Diesel "Repower", Inc. v. Islander Invs., Ltd., 271 F.3d 1318 (11th Cir. 2001).  According to Aramark, Diesel Repower represents the minority rule.  Aramark characterizes the law as split in the circuits, with the purported split arising out of the United States Supreme Court case of Bisso v. Inland Waterways Corp., 349 U.S. 85 (1955).  (See Aramark's Reply & Opp'n (Docket No. 142) at 9-11.)

Although it is not clear from the case law, it appears that the courts are making an already-established distinction between ordinary and gross negligence.  For instance, the First Circuit in Broadley discusses Bisso and an earlier First Circuit decision in which the court stated that an exculpatory clause may "not provide for total absolution of liability."  See Broadley, 471 F.3d at 274, citing La Esperanza de P.R., Inc. v. Perez Y Cia de P.R., Inc., 124 F.3d 10 (1st Cir. 1997).  The Broadley court found the statement in La Esperanza to be dictum and added that "this [statement] may simply mean (unexceptionally) that parties cannot contract out of gross

12

negligence." Id.  To the extent there is a split, the majority rule is better articulated and better reasoned.  Under that rule, "an exculpatory clause limited to barring liability for ordinary negligence would be valid, assuming it were not inflicted by a monopolist or one with greatly superior bargaining power." Id.

Under the circumstances here, the Liability Clause does not violate public policy.

## CONCLUSION

The court holds that the Liability Clause is enforceable against Mr. Prescott (and his heirs and estate).  The Liability Clause is not enforceable against the remaining members of the Prescott Party—namely Katherine Prescott, Terry Taranto, and Maryanne Taranto—because they were not parties to the Rental Agreement.

Furthermore, the fact that Mr. Prescott has a duty to indemnify Aramark under certain circumstances does not bar the remaining Claimants' causes of action against Aramark.  Aramark must defend against the claims (and resolve them) before seeking indemnification from Mr. Prescott.  See Pavoni v. Nielsen, 999 P.2d 595, 598 (Utah Ct. App. 2000) ("Under a contract to indemnify for damages or loss, an action does not arise until the indemnitee has actually incurred a loss."); Salt Lake City Corp. v. Kasler Corp., 855 F. Supp. 1560, 1573 (D. Utah 1994) ("Generally, a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment.").

## ORDER

For the foregoing reasons, Aramark's Motion for Partial Summary Judgment (Docket No. 120) is GRANTED IN PART (as to Mr. Prescott) AND DENIED IN PART (as to the remaining

Claimants).  The Claimants' Motion for Partial Summary Judgment (Docket No. 127) is

DENIED.

DATED this 29th day of August, 2012.

> BY THE COURT:
>
> *[signature: Tena Campbell]*
>
> TENA CAMPBELL
> U.S. District Court Judge